**WABASH RAILROAD COMPANY,**
Respondent,

v.

**DANNEN MILLS, Incorporated, a Corporation, and Volley Bunch, Appellants.**

No. 22250.

Kansas City Court of Appeals.

Missouri.

April 4, 1955.

William H. Becker, Robert C. Smith, Jr., Columbia, William C. Frank, Russell D. Roberts, Kirksville, for appellants.

Jayne & Jayne, Kirksville, for respondent.

FRED H. MAUGHMER, Special Judge.

Defendants, Dannen Mills, Inc., and Volley Bunch, were owner and driver, respectively, of a tractor-trailer truck, which struck a Wabash Railroad locomotive and train at a grade crossing south of Kirksville, Missouri. The verdict and judgment was for plaintiff, Wabash Railroad, in the sum of $764.50, and against defendants on their counterclaims. Both defendants appealed.

The accident occurred about 8:00 a. m., February 13, 1952, where Highway 11 intersects the Wabash tracks. Plaintiff was operating a two-unit Diesel freight train of 76 cars, 69 of which were loaded. The railroad generally runs east and west, but north and south where the collision occurred.

Henry D. Adams, engineer, testified that it was raining, but not hard; that he was rounding the curve and heading north, approximately one-fourth mile south of the

crossing and traveling about 30 to 35 miles per hour and slightly downgrade, when he first saw defendants' truck; that defendants' truck at that time was headed west and was running 40 or 50 miles per hour; that he whistled at the mile post a quarter mile away—gave a regular crossing whistle as he approached the intersection and kept it going until he had occupied the crossing. He estimated the truck was 60 feet or more away when the engine "went across the crossing." The Diesel engines on the train were each approximately 60 feet long. The truck hit between the two Diesels. The engineer further stated that the front of his engine was entering the crossing, with the truck about 60 feet away, when he first realized that the truck was not going to stop, and that it was too late then to slow or stop the train. However, he stated that at that time he immediately applied the emergency brakes and the train came to a stop 30 car lengths or more than 1200 feet beyond the crossing. A standard freight car is 40 feet long. The testimony of the fireman and brakeman was not especially important. They both heard the whistle for the crossing; one saw the truck just before the accident; the other heard and felt the blow.

Defendant Bunch testified that at the time of the accident it was raining hard; that his side windows were steamed up, so that he could not see out; that his speed was about 40 miles per hour; that he had driven over the highway many times and was familiar with the crossing. He said, "As I came up the road there, why, I looked—looked to the south through the windshield, as far as I could see, and I didn't see nothing, and I advanced on up the road until I could see north around Mr. Fickle's house, and I didn't see nothing nor I didn't hear nothing at no time, and I just pushed down on the accelerator and let the truck roll on." He stated that Mr. Fickle's house was about 210 feet east of the crossing; that he never saw the train and the next thing he knew was two days later when he woke up in the hospital. On cross-examination he admitted that when he was 500 feet east of the crossing, he could see 306 feet south on the track.

Among others, the Court gave Instructions numbered 1, A, and B. Instructions A and B submitted defendants' humanitarian theories—A on failure to slacken speed; B on failure to give warning. Instruction No. 1 was a verdict-directing instruction, submitting plaintiff's allegation of primary negligence for failure to "maintain a lookout." In this instruction defendants' theories of "last clear chance" were not mentioned. Defendants say that these instructions are conflicting and misleading; that No. 1 directed a verdict regardless of the humanitarian case and amounted to reversible error. Defendants also contend that plaintiff was guilty of contributory negligence as a matter of law. Based on the facts here this latter point is ruled against defendants without further discussion. Plaintiff urges that the conflict, if conflict there was, was caused by defendants, inasmuch as in trial practice plaintiff submits instructions first and plaintiff did not know whether defendants would submit primary or humanitarian negligence. That may be the practice, but it would not lessen or cure such error since plaintiff could still modify its instructions accordingly. Plaintiff urges, in addition, that defendants' humanitarian instructions never should have been given under these facts and therefore the conflict redounded to defendants' favor and is not ground for reversal. This latter contention requires careful consideration.

Instruction No. 1 made no mention or reference to humanitarian negligence. It did not even obliquely refer to it by requiring a finding that defendants' failure to maintain a lookout was the sole cause of the accident, or by inserting a phrase "that plaintiff was not guilty of negligence as submitted in other instructions," or that "this instruction will not apply if you find for defendants under Instructions A or B."

In Mott v. Chicago R. I. R. Co., Mo.App., 79 S.W.2d 1057, loc. cit. 1062, this court said:

"It will be noted that, in effect the instruction tells the jury that if deceased Lloyd Mott was himself negli-

gent then the jury should find for defendant. But there was the charge of negligence under the 'humanitarian' or 'last chance' rule. And in that event, even if the deceased, Lloyd Mott, were negligent, that would not be a defense under that rule. Hence defendant's instruction conflicts with plaintiffs' instruction No. 6. It is well settled that conflicting instructions constitute error." (Cases cited therein.) * * *

In Johnson v. Cox, Mo., 262 S.W.2d 13, loc. cit. 15, 16, our Supreme Court ruled:

"Instruction 2 is prejudicially erroneous, however, because it fails to hypothesize facts from which a jury could find that deceased's negligence was the sole proximate cause of the collision. We have repeatedly held that a proper sole cause instruction must so do, as well as to (as does instruction 2) negative the defendant's humanitarian negligence as submitted by plaintiff."

In this opinion the court apparently ruled that the phrase "and that defendant was not guilty of negligence as submitted in other instructions herein" was sufficient to negative the defendants' humanitarian negligence. However, the court went on to say:

"Thus, the instruction was likely to confuse the jury; it tended to divert attention from the humanitarian issue as to whether defendant should have seen deceased in time to have avoided the collision by stopping or swerving; and it could be so understood as to authorize the jury to find deceased's antecedent negligence a bar to plaintiff's recovery."

■ We believe that the instructions given in the case at bar amounted to a prejudicial conflict in instructions, unless, as plaintiff insists, defendants were not entitled to a humanitarian submission.

■ We shall now examine that question. In Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889, loc. cit. 899, 900, the Supreme Court of Missouri declared and applied the rule with respect to the factual requirements of a humanitarian case, saying:

"The constitutive facts of a humanitarian case are: ' "(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury * * *; (4) by reason thereof plaintiff was injured." Evidence tending to prove these facts makes a prima facie case for plaintiff. In some instances obliviousness of danger on the part of the plaintiff is necessary to make the situation in which he is placed one of peril. In such cases it is of course incumbent upon the plaintiff to make proof of the facts and circumstances tending to show obliviousness, not only for the purpose of establishing that he was in a position of peril, but to bring home to defendant a knowledge of his peril. In these cases, however, obliviousness is but a subsidiary or evidentiary fact, the perilous situation of plaintiff and defendant's knowledge of it are the ultimate, issuable facts.' * * *

"Defendant had the duty to maintain a lookout for persons approaching or upon the intersections of public highways and defendant's tracks. * * * There should be evidence, therefore, tending to show that the defendant either knew or had constructive notice that the deceased was in a position of peril.

"In the case at bar facts equivalent to obliviousness were admitted in the abandoned answer, introduced into evidence. In exemplifying the effect of obliviousness, under the decisions of this court, it is stated, 'if the plaintiff is driving an automobile and has reached a position of such proximity to the path of the defendant's vehicle that

even an immediate application of the brakes could not cause him to stop before the collision occurs, he is certainly in peril. * * * if a plaintiff is approaching the pathway of the defendant on a course which, unless he stops, will produce a collision and if he is at the time oblivious to the presence and approach of the defendant, this in itself will cause him to be in a position of peril' * * *.

" 'The defendant is entitled to assume that the plaintiff is paying or will pay reasonable attention to his surroundings; until he has reason to suspect the contrary, he has no reason to believe that the plaintiff is in any danger. Therefore, the defendant is liable only if he realizes or has reason to realize that the plaintiff is inattentive and consequently in peril. Thus, if an engineer of a train approaching a level highway crossing sees a traveler approaching the track on foot or in a vehicle, he is not required to take any steps either to warn the traveler by an additional blast of his whistle or to bring the train under special control, since he is entitled to assume that the traveler has discovered or will discover the oncoming train and will stop before reaching the crossing. However, * * * if there is anything in the demeanor or conduct of the plaintiff which to a reasonable man in the defendant's position would indicate that the plaintiff is inattentive and, therefore, will or may not discover the approach of the train, the engineer must take such steps as a reasonable man would think necessary under the circumstances.' * * *

"Defendant's duty to use care to avert injury to another under the humanitarian doctrine arises only 'on (defendant's) discovery of peril, or on negligence in discovering it when there is a duty to keep an outlook and make discovery of the peril.' State ex rel. Fleming v. Bland, 322 Mo. 565, 15 S.W. 2d 798, 800. In the latter situation, under the humanitarian doctrine, a defendant 'To be free from negligence

* * * must act on reasonable appearances and at a time when action would be effective.' Allen v. Kessler, Mo., 64 S.W.2d 630, 633. See also Perkins v. Terminal R. Ass'n of St. Louis, 340 Mo. 868, 102 S.W.2d 915, and Womack v. Missouri Pac. R. Co. [337 Mo. 1160, 88 S.W.2d 368], supra."

In Roberts v. Chicago B. & Q. R. Co., Mo.App., 266 S.W.2d 38, loc. cit. 42, 43, 44, this court recently spoke on the subject as follows:

"The Missouri humanitarian theory of negligence derives from the 'last clear chance' doctrine, which is traced from the English case of Davies v. Mann (1842) 19 Eng.Rul.Cas. 190; 152 Exchequer, Book 8, 547–549; 92 A.L. R., pages 49 and 80. It only operates toward a plaintiff who is actually in imminent peril; and it does not arise or exist until defendant is charged in law with knowledge (actual or constructive) that plaintiff is actually in a position of imminent peril. Constructing and Reviewing Instructions—Trusty, (Missouri Edition) 149. See also 92 A.L.R. 79–80. The doctrine has been clearly defined and followed in Missouri for many years. Hanlon v. Missouri Pac. Ry. Co., 104 Mo. 381, 16 S.W. 233.

"The constructive facts of a cause of action under the Missouri humanitarian rule, classically stated in Banks v. Morris & Co., 302 Mo. 254, 267, 257 S.W. 482, 484, are as follows:

" ' "(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured." '

"* * * It follows that if there is a failure of evidence as to any essential element, no submissible case is made. * * * In the case at bar, obliviousness of danger on the part of plaintiff was necessary in order to make his situation perilous. It was, therefore, '* * * incumbent upon the plaintiff to make proof of the facts and circumstances tending to show obliviousness, not only for the purpose of establishing that he was in a position of peril, but *to bring home to defendant a knowledge of his peril'* in time for the engineer to act effectively to avert the collision. * * *

"We cannot say that a reasonable man should have realized that the truck was in a position of peril when it was ¾ of a block away, proceeding at a speed of 45 miles per hour, approaching a train in plain sight on a level roadway with all signals being given.

* *. · * * · * *

"In Missouri we have extended the humanitarian theory of negligence to cover cases where there is substantial evidence tending to prove that defendant could have seen plaintiff in a position of peril, even when due to his own negligent inattention to his safety, continued until the instant of impact. It has been said that nothing short of suicide or wilful conduct of the injured person will deprive him of the benefit of the doctrine if defendant realized, or could have realized, plaintiff's peril in time to have acted. * * * That is far enough. The finder of the facts should not be permitted to fix liability in the absence of substantial evidence tending to prove that defendant, as a reasonable person should have reasonably realized that plaintiff was in a position of imminent peril, especially when peril is due solely to obliviousness through inattention, in time for defendant to have acted effectively to avoid the injury."

A judgment for the plaintiff was reversed outright.

In the case at bar was there failure of evidence as to any essential element of a submissible "last clear chance" case? Proof of obliviousness was made. The defendant driver said he never did see the train and there is no evidence that he ever slowed or swerved his truck.

The position of peril arose when defendants' truck was so close to the crossing as to be unable to stop before reaching the tracks. The record contains no direct affirmative evidence as to the distance required for defendant to stop. However, the defendant driver says his truck was moving about 40 miles per hour and that when he was about 210 feet east of the crossing he "just pushed down on the accelerator and let the truck roll on."

The train was moving about 35 miles per hour. It entered the crossing ahead of the truck—one Diesel 60 feet long crossed safely. It follows that the truck was more than 60 feet away when the train was at the middle of the crossing. Therefore, the train was less than 100 feet from the center of the crossing when defendants' truck was 160 feet away—ample distance in which to stop and so not in peril. Using emergency brakes the train moved 30 car lengths—over 1200 feet—before stopping.

There was no evidence suggesting any behavior by defendants or any movement by the truck that would reasonably advise the engineer as to defendants' obliviousness prior to entering the zone of peril. After his (Bunch) arrival in the danger zone, the train was less than 100 feet from the crossing—much too close to stop or slow sufficiently to avoid the accident or to save the situation with bell or whistle.

We have a liberal rule in Missouri on humanitarian cases, but under these facts and under the decisions of our appellate courts, we do not believe that defendants, through either counterclaim, made a submissible case under the humanitarian rule. Therefore, the conflict in instructions was helpful rather than harmful to defendants.

The judgment is affirmed.

WEIGHTMAN, Special Judge, and BROADDUS, J., concur.

CAVE, P. J., and DEW, J., not participating.