Hugh H. HARRIS, Respondent,

v.

Delmo D. ROWDEN, Appellant.

No. 45932.

Supreme Court of Missouri,
Division No. 2.

Sept. 9, 1957.

Gene J. MacElhern, Thomas E. Hudson, Hudson, Cavanaugh & Fox, Kansas City, for appellant.

Thos. E. Deacy, Thos. E. Deacy, Jr., Deacy & Deacy, Kansas City, for respondent.

BOHLING, Commissioner.

This appeal involves an automobile collision at a highway intersection. Hugh H. Harris sued Delmo D. Rowden for $17,941.14 damages. Defendant filed an answer and counterclaim, seeking $20,000 damages. Plaintiff's claim was submitted on grounds of primary and humanitarian negligence. Defendant's claim was submitted on grounds of primary negligence. The jury returned a verdict for defendant on plaintiff's claim and for defendant and against plaintiff on defendant's counterclaim for $5,500. The court sustained plaintiff's motion for new trial on the ground of error in giving certain instructions for defendant, reinstating plaintiff's claim. Defendant has appealed. We have jurisdiction by reason of the amount in dispute, plaintiff's claim plus defendant's judgment. Fulton v. City of Lockwood, Mo., 269 S.W.2d 1 [1]; McDonald v. Logan, 364 Mo. 382, 261 S.W.2d 955 [1].

The accident occurred at the intersection of U. S. Highway No. 50 and Colburn road in Jackson County, Missouri. Highway No. 50 is a divided highway at the scene of the collision, has two 22-foot paved slabs with a parkway of 24 to 30 feet between the slabs, and extends northwesterly and southeasterly. The east slab is for northbound and the west slab is for southbound traffic. Colburn road is a two lane east-west highway with a 36-foot pavement. The pavement flares out at all the corners to facilitate turning at the intersection. There was a stop sign for westbound traffic on Col-

burn at the northeast corner of the intersection some distance east of the east edge of the northbound slab of No. 50, but its exact location was not established. There was no stop sign for westbound traffic on Colburn for the southbound slab of No. 50. On account of the angle involved in the intersection, the distance from the east edge of the northbound slab to the east edge of the southbound slab of No. 50 was 60 to 62 feet. An electric caution flasher signal, showing "Slow 40 miles an hour," was two blocks or more north of the intersection and an intersection sign was "pretty close" to the intersection for southbound traffic on No. 50.

It was dark at the time of the collision, between 7:00 and 7:30 p. m., November 11, 1952. The night was clear. The pavement was dry. The highways were straight and level. The only automobiles anywhere near the intersection were the two cars involved. There were no obstructions to the view of plaintiff or defendant.

Defendant lived at Richland, Missouri. He drove his father's 1941 Oldsmobile sedan to Kansas City that morning in the hope of finding work. He stated the headlights, brakes and horn of his car were in proper operating condition. He drove to Kansas City in three or four hours and estimated the distance to be 150 miles. He was on his way home on the west half of the southbound lane at the time of the accident.

The issues call for a consideration of the evidence favorable to plaintiff. Plaintiff, driving, was westbound in his 1946 Oldsmobile sedan on Colburn road. Mrs. Margaret Pennington occupied the front seat with him. Plaintiff had the headlights of his car on, but defendant did not. Plaintiff stopped at the stop sign at the northeast corner of the intersection. He looked both ways for traffic on No. 50. He could see no approaching traffic. He started across the intersection. As he proceeded he continued to look for approaching traffic on No. 50, and testified there was no southbound traffic on No. 50 or eastbound traffic on Colburn

road, and no lights of any other automobile that he could see any place. He did not see any cars. He could have seen a car with its headlights on. He proceeded across the southbound lane of No. 50 without stopping, there being no stop sign there for westbound traffic on Colburn. When the front 7 or 8 feet of his sedan had cleared the west edge of the southbound lane of No. 50 and without his seeing any lights or hearing any horn or other warning signal of an approaching car, the right side of his sedan from the windshield to the rear bumper was struck headon by defendant's car. Plaintiff did not slacken his speed after he started up at the stop sign, and estimated he reached a speed of 6, 8 or 10 m.p.h. Defendant estimated plaintiff reached a speed of 10 or 15 m.p.h. The width of an automobile was established at 6 feet or a few inches less, and there was 12 to 13 feet of the southbound lane open for southbound traffic on No. 50 east of plaintiff's sedan.

Some testimony given by defendant at the trial and in a deposition offered in evidence by plaintiff tended to aid plaintiff's case. Defendant saw the caution sign and the crossroads sign. Upon passing the caution sign he reduced his speed to 40 m.p.h. He traveled with his right wheels within three or four feet of the west edge of the southbound lane. When he was 200 feet north of the intersection he first saw plaintiff's car about half way across the northbound lane. Defendant watched plaintiff's car. He did not know there was no stop sign for westbound traffic on Colburn for the southbound lane of No. 50, and thought plaintiff would stop. Defendant was not thinking about stopping. He was about 100 feet north of the intersection when he realized there was danger of a collision and was within 75 or 80 feet of the intersection when he first thought of putting on his brakes. Plaintiff's car had moved into the southbound lane four or five feet when defendant applied his brakes and defendant had his brakes on and was sounding his horn when 40 to 50 or 30 to 40 feet from

the intersection. Defendant made no effort to swerve his car. He thought he could stop in 200 feet when traveling 40 m.p.h.

D. E. Millsap, of the State Highway Patrol, investigated the accident. He testified defendant's car left skid marks of 45 to 48 feet in length on the extreme west lane of No. 50 before the impact; that the skid marks came straight ahead to the point of impact; and that defendant told him he was traveling 40 m.p.h. at the time of impact.

There was other evidence of record that defendant was traveling 40 m.p.h. at the instant of impact.

Defendant adduced evidence in support of his counterclaim. It need not be developed.

The occupants of both automobiles received injuries in the collision.

Plaintiff contends defendant's instruction No. 10 erroneously relieved defendant of any duty under the humanitarian doctrine until plaintiff's perilous position became apparent to "defendant, Delmo D. Rowden"; and erroneously directed a verdict for defendant upon the whole case, ignoring plaintiff's primary negligence submissions. The instruction reads (emphasis supplied):

"The Court instructs the jury that there was no duty resting upon defendant, Delmo D. Rowden, the driver of the automobile mentioned in evidence, to stop his automobile, or to divert the course of same, until it became apparent in the exercise of the highest degree of care *on the part of the said defendant* that the plaintiff was in a position of imminent peril on the highway mentioned and described in the evidence, and that plaintiff was oblivious of such peril, if any, or unable to extricate himself therefrom.

"Therefore, if you believe and find from the evidence, that the perilous position of the plaintiff, if any, *became so apparent to the said defendant,*

*Delmo D. Rowden,* when the automobile which he was driving was so close to the plaintiff that the same could not be stopped, or the course of the same diverted, by the exercise of the highest degree of care, nor a warning given in time to avoid striking the plaintiff; *then said plaintiff is not entitled to recover, and your verdict must be for the defendant upon plaintiff's petition.*"

Defendant, to avoid plaintiff's contentions, asserts this instruction is not in conflict with plaintiff's authorities, and that plaintiff was not entitled to a humanitarian submission and defendant's motion for a directed verdict at the close of all the evidence should have been given.

▮▮▮ Plaintiff's humanitarian instruction, so far as material, predicated a plaintiff's verdict upon findings, among others, that "Rowden saw, or by using the highest degree of care could have seen plaintiff" in a position of imminent peril in time thereafter to have avoided the collision by slackening speed, swerving, and warning plaintiff. The following authorities are to the effect that instruction No. 10 is subject to the first criticism leveled against it by plaintiff. Wilt v. Moody, Mo., 254 S.W.2d 15, 19 [7], reviewing cases; Faught v. Washam, Mo., 291 S.W.2d 78, 83 [9]; Dixon v. General Grocery Co., Mo., 293 S.W.2d 415, 421 [7]. The law exacts of operators of motor vehicles on the highways of this state the highest degree of care of an ordinary competent operator of motor vehicles, and not that of the individual operator involved. Borgstede v. Waldbauer, (Banc), 337 Mo. 1205, 1210, 88 S.W. 2d 373, 374 [4, 5]; Burlingame v. Landis, 362 Mo. 523, 527, 242 S.W.2d 578, 580 [1]; Wilson v. Shumate, Mo., 296 S.W.2d 72, 77 [9].

▮▮▮ Defendant's motion for a directed verdict, so far as involved here, was on the ground that: "Under the law, defendant is entitled to a verdict against plaintiff on the

petition of plaintiff herein filed." We are not in accord with defendant's contention that the evidence when viewed in the light most favorable to plaintiff failed to make a submissible humanitarian case. It was for the jury to determine when plaintiff entered a position of imminent peril and whether defendant saw, or in the exercise of the highest degree of care of an ordinary competent operator of motor vehicles should have seen, plaintiff in such position of imminent peril, proceeding across the intersection without slackening his speed and oblivious to his peril, in time thereafter to have avoided the collision by slackening speed, swerving and warning.

■ Instruction No. 10 is a defendant's converse humanitarian instruction and directs a verdict "for the defendant upon plaintiff's petition"; that is, a verdict for defendant upon the whole of plaintiff's case. This instruction completely ignores plaintiff's submitted grounds of recovery for defendant's primary negligence, and is clearly erroneous in that it was not restricted to plaintiff's claim based on defendant's negligence under the humanitarian doctrine. Hensley v. Dorr, Mo., 191 S.W.2d 663, is in point. Where plaintiff makes a case on both primary and humanitarian negligence and submits both issues for the jury's determination an instruction which directs a verdict for defendant on the whole case and ignores plaintiff's right to recover under either of plaintiff's submissions is erroneous. Sauer v. Winkler, Mo., 263 S.W.2d 370, 373 [1]; Wabash R. Co. v. Dannen Mills, Inc., (Banc), Mo., 288 S.W.2d 926 [1], approving Mo.App., 279 S.W.2d 50, 52 [3], and the citations in said cases. If defendant's contention in justification of the instruction is good; that is, that plaintiff failed to make a humanitarian case, then said instruction is the equivalent of a directed verdict for defendant as the instruction precluded the jury from considering primary negligence on the part of the defendant, such as operating his automobile in the nighttime without lights, in arriving at its verdict "upon plaintiff's petition."

We need not take up plaintiff's attacks against the other instructions, as the issues presented should not recur upon a new trial. It might be well for defendant to refer to the following cases on a plea of contributory negligence in an answer to avoid, if for no other reason, an unnecessary issue. Smith v. Kansas City Pub. Serv. Co., 328 Mo. 979, 43 S.W.2d 548, 555 [18]; White v. Powell, 346 Mo. 1195, 145 S.W.2d 375 [1].

The order granting a new trial is affirmed and the cause is remanded.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.