**AMERICAN EQUITY MORTGAGE, INC., Respondent,**

v.

**Ray VINSON, Jr., Defendant,**

and

**Vinson Mortgage Services, Inc., Appellant.**

**No. ED 97103.**

Missouri Court of Appeals, Eastern District, Division Four.

April 24, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2012.

Application for Transfer Denied Aug. 14, 2012.

Steven M. Hamburg, Stephanie L. Gold, Clayton, MO, for Appellant.

Gerard T. Carmody, James P. Carmody, David P. Stoeberl, St. Louis, MO, for Respondent.

ROBERT M. CLAYTON, III, Judge.

Vinson Mortgage Services, Inc. ("VM") appeals the judgment entered upon a jury's verdict in favor of American Equity Mortgage, Inc. ("AEM") on its claim for unfair competition. We affirm.

## I. BACKGROUND

AEM is a Missouri corporation with its headquarters in St. Louis. AEM conducts residential mortgage and brokerage business. The company was founded by Deanna Daughhetee and Ray Vinson, Jr., during their marriage. Daughhetee and Vinson's marriage was dissolved in 2006, and during the dissolution proceedings, each claimed ownership of AEM. The dissolution decree granted ownership and control of AEM to Daughhetee. Vinson subsequently created VM and began advertising on the radio, television, and in print advertisements. In October 2006, AEM filed suit against Vinson and VM for unfair competition based upon VM's alleged use of deceptive advertising practices to pass itself off as AEM and trade on AEM's established reputation.[1] After trial, a jury found in favor of AEM, awarding it $300,000.00 for its claim of unfair competition. The trial court entered judgment upon the jury's verdict. VM filed a motion to vacate, correct, reopen or modify the judgment and alternative motion for new trial, which the trial court denied. VM now appeals.

## II. DISCUSSION

In its sole point on appeal, VM claims the trial court erred in submitting Instruction 7, the verdict director, to the jury. According to VM, the jury was improperly instructed on the claim of unfair competition because Instruction 7 did not include any requirement that AEM prove a secondary meaning to the phrases or words VM allegedly unfairly used in its advertising. VM argues this secondary meaning was a required element of AEM's claim of unfair competition. We disagree.

### A. Standard of Review

Whether a jury is properly instructed is a question of law, which we

1. AEM's third amended petition also alleged claims for defamation and tortious interference with a business relationship; however, those claims were dismissed prior to trial. In addition, AEM dismissed Vinson from the suit prior to trial.

review *de novo. Fleshner v. Pepose Vision Institute, P.C.,* 304 S.W.3d 81, 90 (Mo. banc 2010). When reviewing a claim of instructional error, we view the evidence most favorable to the submission of the instruction, we disregard evidence to the contrary, and we reverse only where the party claiming the error shows that the instruction misled, misdirected, or confused the jury. *Moore ex rel. Moore v. Bi-State Dev. Agency,* 87 S.W.3d 279, 293 (Mo.App. E.D.2002).

■ Rule 70.02[2] mandates the use of the Missouri Approved Instructions ("MAI") if the instructions are applicable. However, the MAI do not cover every claim, and therefore, Rule 70.02(b) allows for the modification of MAI, as well as the use of non-approved instructions. Where a non-MAI instruction must be used, as in the present case, the instruction must follow the applicable substantive law and be readily understood by the jury. *Doe v. McFarlane,* 207 S.W.3d 52, 75 (Mo.App. E.D.2006).

### B. Unfair Competition

■ In this case, AEM filed an action for unfair competition against VM, alleging VM attempted to "pass off" its services as those of AEM. In its petition, AEM cites VM's use of AEM's "distinctive marketing," as well as their slogans and advertising. AEM relies upon The Restatement (Third) of Unfair Competition (1995) ("the Restatement") to argue the doctrine of unfair competition encompasses separate theories under which a claim can be brought. "Missouri courts may look to the Restatement (Third) of Unfair Competition when analyzing unfair competition claims." *Hubbs Machine & Manufacturing, Inc. v. Brunson Instrument Co.,* 635 F.Supp.2d 1016, 1018 (E.D.Mo.2009); citing *Doe v.*

*TCI Cablevision,* 110 S.W.3d 363, 368 (Mo. banc 2003).

Section 1 of the Restatement provides that a party can be subject to liability for harm to another's commercial relations where the party engages in certain deceptive practices. These practices include, in relevant part, deceptive marketing, infringement of trademarks and other indicia of identification, and appropriation of "intangible" trade values, such as trade secrets. Chapter two of the Restatement further defines the concept of deceptive marketing. The Restatement, Section 2, states that one who advertises goods or services in a way likely to deceive or mislead prospective patrons to the commercial detriment of another is subject to liability for such deceptive practices. Section 4 of the Restatement provides:

> One is subject to liability to another under the rule stated in § 2 if, in connection with the marketing of goods or services, the actor makes a representation likely to deceive or mislead prospective purchasers by causing the mistaken belief that the actor's business is the business of the other, or that the actor is the agent, affiliate, or associate of the other, or that the goods or services that the actor markets are produced, sponsored, or approved by the other.

Missouri case law is largely in accord with this provision. *See National Motor Club of Mo., Inc. v. Noe,* 475 S.W.2d 16, 19–20 (Mo.1972) (unfair competition consists of passing off or attempting to pass off the business of one as the business of another); *Essex v. Getty Oil Co.,* 661 S.W.2d 544, 555 (Mo.App. W.D.1983) (unfair competition is a "species of commercial hitchhiking which the law finds offensive."); *Soft–Lite Lens Co. v. Optical Service Co.,* 133 S.W.2d 1078, 1082 (Mo.App.

---

2. References to Rules are to Missouri Supreme Court Rules (2011).

1939) (unfair competition consists of passing off or attempting to pass off goods or services of one as the goods or services of another); and *Joseph S. Baum Mercantile Co. v. Levin,* 189 Mo.App. 237, 174 S.W. 442, 444–445 (1915) (conduct, the natural and probable effect of which is to deceive the public as to pass off the goods or business of one for that of another, constitutes actionable unfair competition).

At trial, the jury was given Instruction 7, which required the jury to find in favor of AEM if it believed VM engaged in conduct likely to deceive or mislead prospective customers, and that such conduct caused the mistaken belief that:

(i) Vinson Mortgage's business was that of American Equity, or

(ii) Vinson Mortgage is American Equity or an agent, affiliate or associate of American Equity, or

(iii) Vinson Mortgage's mortgage services were produced, sponsored, or approved by American Equity . . .

Instruction 7 further required the jury to find that AEM was damaged by VM's conduct. The elements set forth in this instruction substantively followed the Restatement of Unfair Competition, Section 4.

■ VM claims that because AEM's action was brought essentially for the use of certain phrases commonly used in AEM advertisements, the action fell under the trade name or identifying phrases theory of liability set forth in Section 1 of the Restatement. VM points to several trade name cases in which the courts discuss this theory. Essentially, where unfair competition is alleged for use of a trade name, or identifying words or phrases, the name or words must have acquired a secondary meaning or significance that identifies the party making the claim, and the defendant must have unfairly used the name or words to the prejudice of the plaintiff.

*Cornucopia, Inc. v. Wagman,* 710 S.W.2d 882, 888 (Mo.App. E.D.1986). According to VM, the jury was improperly instructed because the verdict director should have required the jury to find the specific words or phrases used in VM's advertisements had acquired secondary meaning, specifically identifying with AEM. However, VM's argument is without merit.

Although the Restatement does contain sections setting forth liability for the infringement upon trademarks or other identifying trade names, as well as sections relating to liability for appropriating trade secrets, AEM's allegations were not based on these provisions. Instead, in its claim for unfair competition, AEM specifically claimed VM was using AEM's distinctive marketing in an effort to pass off AEM's services as VM's own. In addition, AEM presented significant evidence at trial of the likenesses in the advertisements. Viewing the evidence in the light most favorable to the submission of Instruction 7, we note that Daughhetee testified she was shocked the first time she heard a radio advertisement for VM. She stated the VM advertisement was "an American Equity ad that they were using under the name Vinson Mortgage." She testified AEM received calls from confused customers asking for Vinson himself or VM. AEM also played advertisements from both AEM and VM at trial. The evidence showed that rather than simply incorporating the use of particular phrases, slogans, or Vinson's voice itself for its advertisements, VM used virtually identical advertisements to those of AEM. While VM's advertisements did include certain phrases used by AEM, as well as used Vinson's voice, they also incorporated the content, syntax, and message used by AEM in its advertising. In addition, Vinson himself testified he adopted and used the same

marketing strategies used at AEM because he believed they would work for VM.

Based upon this evidence, the trial court submitted Instruction 7 to the jury, which as previously noted, substantively followed the Restatement (Third) of Unfair Competition, Section 4 and did not mislead, misdirect, or confuse the jury. Therefore, we cannot conclude the trial court erred in submitting Instruction 7 to the jury. VM's sole point on appeal is denied.

### III. CONCLUSION

The judgment of the trial court is affirmed.

KURT S. ODENWALD, C.J. and PATRICIA L. COHEN, J., concur.