Amber HALE, f/k/a Amber Koester, Appellant-Cross Respondent,

v.

BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY, Respondent-Cross Appellant.

No. SD 34483 and SD 34494

Missouri Court of Appeals, Southern District, Division Two.

FILED: July 31, 2017

Douglas L. Healey & Penny Speake, Springfield, MO, for appellant-cross respondent.

Laurel E. Stevenson, Springfield, MO, for respondent-cross appellant.

DANIEL E. SCOTT, J.

We address, again, the matter of improper not-in-MAI jury instructions.[1]

### Background

Amber Hale was driving alone at night on a familiar road when she struck the side of a train's lead engine at a marked crossing less than a mile from her home. Hale sued, the railroad ("BNSF") obtained summary judgment, Hale appealed, and we reversed and remanded, finding genuine issues of material fact that precluded summary judgment. *See Hale v. Wait*, 364 S.W.3d 720, 721, 723 (Mo.App. 2012).[2]

At jury trial thereafter, it was established that Hale could have seen the train when she was 300 feet from the crossing, but did not look until she was five feet from the crossing and left no skid marks before striking the locomotive's side. She testified that she had no warning because the crossing lights and bells did not activate and the train crew did not properly sound the horn. BNSF offered a wealth of testimony and documentary evidence to the contrary. In closing argument, Hale's counsel told jurors the case boiled down to

---

1. *See Berger v. Copeland Corp.*, 505 S.W.3d 337, 338-42 (Mo.App. 2016); *Pisoni v. Steak 'N Shake Operations*, 468 S.W.3d 922, 927-28 (Mo.App. 2015). MAI citations are to the Seventh Edition (2012 & Supp. 2017).

2. We agreed with one argument for reversal there and thus considered no others. *Id.* at 721, 723. This defeats BNSF's current cross- appeal request to dismiss Hale's sole point here under the law of the case doctrine; *see Walton v. City of Berkeley*, 223 S.W.3d 126, 128-31 (Mo. banc 2007). Our prior reversal and general remand left all issues not conclusively decided open for consideration at the new trial. *See Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 634 (Mo. banc 2013).

whether they believed BNSF's witnesses or Hale. The jury found Hale 100% at fault and judgment was entered accordingly.

Hale's appeal challenges not-in-MAI Instruction 9, a one-sentence submission given at BNSF's request, over Hale's objection, telling jurors that BNSF's train crew "had a right to assume that a vehicle approaching a crossing would stop before going upon the crossing."

## BNSF's Arguments for Instruction 9

BNSF overcame the trial court's initial skepticism and obtained Instruction 9 through arguments like these:

> [BNSF'S COUNSEL [3]]: It's been well settled law now for over 60 years, not only in Missouri but around the country that train crews have a right to assume that motorists approaching a crossing will stop.
>
> * * *
>
> So, the law has established an assumption which also exists, by the way, for motor vehicles, that the motorist will abide by the law.
>
> * * *
>
> Just like if a motorist is approaching a green light, they don't have to assume that a vehicle approaching the red light is going to run the red.

BNSF further assured the court that this instruction, although not in MAI, was necessary in every case like this because "it is a well settled law" and BNSF was "entitled" to it for that reason.

Finally, BNSF urged the court that this not-in-MAI submission was "necessary" to combat one of Hale's trial theories:

> [BNSF'S COUNSEL]: And so, *to the extent that the plaintiff is going to ar-*

*gue that the train crew had the obligation to abandoned [sic] that signal for an emergency horn sequence then [Instruction 9] to the jury on the law that the train crew had the right to assume that any vehicle approaching that crossing would stop is relevant and <u>necessary</u>.* (Our emphasis.)

## Instruction 9 Was Error

■ None of BNSF's assertions justified Instruction 9, which violated MAI principles and Missouri Court Rule 70.02 in multiple respects.

To fully appreciate these violations, one must understand MAI as "more than a collection of approved instructions." 2 Missouri Practice, Litigation Guide § 15.2 ("Missouri Practice"). MAI's holistic approach, borne of much research and great effort, focused on simplicity to radically improve jury instruction in our courts. The old regime of argumentative mini-essays on the law was replaced by one where jurors get rather sparse directions to be fleshed out by counsel in closing argument. No longer could an instruction be given just because it stated a legal rule, principle, presumption, or inference, even if it did so fairly and accurately. Instead, MAI contemplated instructions only of specified types, particularly worded and arranged to focus juror attention on dispositive issues without parties seeking to gain an edge by submitting instructions in a particular way.[4]

Thus MAI effectively banned hundreds of previously-acceptable instructions. *See Motsinger v. Queen City Casket Co.*, 408 S.W.2d 857, 860 (Mo. 1966); MAI "1963

---

3. Not BNSF's counsel on appeal, but an Arizona attorney participating *pro hac vice.*

4. *See generally* Missouri Practice, *supra*; MAI "How to Use This Book" XLIX-LV ("MAI How to Use This Book") and "Why and How

to Instruct a Jury" LVII-LXXVII ("MAI Why and How"); MoBar CLE, Civil Trial Practice § 12.1 ("MoBar CLE"); *Brown v. St. Louis Pub. Serv. Co.*, 421 S.W.2d 255, 257-59 (Mo. banc 1967).

Report to Missouri Supreme Court" XLIV. Now the *only* categories of MAI instructions in simple cases like this are:

1. Explanatory instructions to tell jurors how a case is tried and explain key legal concepts common to all cases, such as the burden of proof (MAI chapters 2 & 3).
2. Definitions of important legal terms used in the instructions (chapters 11-16).
3. Verdict-directing, converse, and affirmative-defense instructions; these tell the jury what ultimate facts it must find to return verdicts and, if appropriate, to apportion fault (chapters 17-33, 37-39).
4. Damage instructions (chapters 4-10).
5. Withdrawal or limiting instructions, if applicable (chapter 34).[5]

Instruction 9 fit no such category. Worse, it transgressed MAI's prohibition against submitting "rules of law, presumptions, inferences and the like," none of which "has any place in a jury instruction" because those are to be argued by the lawyers, not instructed upon by the court. MAI Why and How LXXV-LXXVI. It particularly violated the principle that a court should not comment on the evidence. *See Pisoni,* 468 S.W.3d at 928. Generally, "singling out specific facts for comment in a jury instruction is impermissible. Such instruction diverts attention away from other relevant evidence and threatens [an opponent's] right to have a jury decide factual issues." *State v. Erwin,* 848 S.W.2d 476, 483 n.4 (Mo. banc 1993).

▮ Furthermore, applicable MAIs advised this jury of each party's respective legal obligations,[6] precluding "any other

instructions on the same subject." Rule 70.02(b). Yet Instruction 9 violated this by further instructing jurors that (1) Hale was obliged to stop short of the crossing, and (2) BNSF's train crew was not obliged to assume Hale might do otherwise.

▮ Instruction 9 also improperly argued BNSF's position. *See* MAI How to Use This Book XLIX ("Do not attempt to make your not-in-MAI instruction argue your position," citing Rule 70.02(b)). Indeed, as earlier noted, BNSF openly stated that it sought this instruction to counter Hale's trial theory and closing argument.

Finally, BNSF purportedly based Instruction 9 on *See v. Wabash R.R.,* 259 S.W.2d 828 (Mo. 1953), but provided jurors a misleadingly-incomplete statement of law by including from *See* only what helped BNSF and omitting what helped Hale.

What *See* and similar cases observed was this:

● Trainmen could assume that a motorist would stop short of a crossing (which BNSF put in Instruction 9 and favored BNSF)

● "until they saw or should have seen that the [motorist] would not stop and was in a position of danger" (Hale's trial theory, which BNSF omitted from its instruction)

● and "what the trainmen were entitled to assume, was that the approaching driver was not oblivious to the approach of the train [favorable to BNSF and implied in its instruction] unless he showed some reasonable appearance of obliviousness"

---

5. *See* MAI Table of Instructions; MoBar CLE §§ 12.1, 12.3. MAI also requires verdict forms in all cases and "packaging" instructions for multi-claim trials.

6. *I.e.,* Hale's verdict director, MAI 17.02 modified (Instruction 7), and BNSF's comparative-fault instruction, MAI 11.01 modified (Instruction 8). For how and why MAI handles parties' duties via such instructions, *see* MAI Why and How LXV-LXVI.

(Hale's trial theory and omitted from BNSF's instruction).

*See*, 259 S.W.2d at 831. *See also Poague v. Kurn*, 346 Mo. 153, 140 S.W.2d 13, 16-18 (Mo. 1940); *Lynch v. Baldwin*, 117 S.W.2d 273, 276-77 (Mo. 1938); *Womack v. Missouri Pac. R.R.*, 337 Mo. 1160,88 S.W.2d 368, 370-72 (Mo. 1935).[7] Borrowing from the Restatement, *Womack* put what BNSF later omitted this way:

> Therefore, if there is anything in the demeanor or conduct of the plaintiff which to a reasonable man in the defendant's position would indicate that the plaintiff is inattentive and, therefore, will or may not discover the approach of the train, the engineer must take such steps as a reasonable man would think necessary under the circumstances.

88 S.W.2d at 371 (quoting Restatement of Torts § 480).

Consistent with BNSF's stated desire at instruction conference, Instruction 9 thus eviscerated Hale's trial theory that BNSF's crew saw or should have seen Hale driving toward the crossing, seemingly oblivious to the danger, so they should have sounded staccato emergency horn blasts, but never did so. Instead, Instruction 9 effectively told jurors that Hale breached her duty to stop, omitted the train crew's potential duty to warn, and implied that the train crew owed Hale no duty.

## Prejudice

■ The last observations alone effectively prevent BNSF from carrying its burden to show that its erroneous instruction posed no substantial potential for prejudice. *See Gumpanberger v. Jakob*, 241 S.W.3d 843, 846 (Mo.App. 2007).[8] We have carefully examined the trial record, but cannot give BNSF the benefit of the doubt when its no-prejudice arguments are so feeble.[9] Maybe BNSF would have won (or may yet win) without Instruction 9 given its volume of evidence. Yet we cannot ignore BNSF's obvious reluctance to trust its evidence and submit the case under standard MAIs. Instead, BNSF claimed it was *entitled to* and *needed* Instruction 9 to refute Hale's trial theory. Having portrayed and obtained Instruction 9 in terms of *necessity*, it rings hollow that BNSF now claims this instruction made no difference. We grant Hale's point.[10]

---

7. That these cases, like *See*, involved claims of humanitarian negligence makes no difference. *Compare Alcorn v. Union Pac. R.R.*, 50 S.W.3d 226, 243 n.18 (Mo. banc 2001), *partially overruled on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29, 40 (Mo. banc 2013), *and* MAI 17.04 ("Failure to Act After Danger of Collision Apparent") in motor-vehicle accident cases.

8. *Perhaps* prejudice is not presumed from erroneous not-in-MAI instructions against which there is no MAI mandate. *See Cornell v. Texaco, Inc.*, 712 S.W.2d 680, 682 (Mo. banc 1986). Such exception would not apply here. *See* page 5 *supra.*

9. First, BNSF cites two cases finding no prejudice from flawed comparative-fault instructions where jurors assessed no fault to defendants. Instruction 9 was not a comparative-fault instruction; the same reasoning does not apply. Second, BNSF urges that evidence "clearly supported the verdict" even if Instruction 9 was wrong, yet sufficiency of the evidence misses the issue again. For that matter, this verdict needed no evidentiary support. *See Stancombe v. Davern*, 298 S.W.3d 1, 7 (Mo.App. 2009).

10. This brings us to BNSF's other cross-appeal point, which asks us to direct the trial court's handling of potential expert testimony upon remand, but offers no persuasive reason why we should do so. Thus we deny the point and, with it, BNSF's cross-appeal as a whole.

**608**

## Postscript

We recounted MAI philosophy and Instruction 9's failings at some length, hoping to nip a budding pattern of parties seeking an improper edge through not-in-MAI instructions (now three opinions within 23 months; *see* note 1 *supra*).

One factor may be a lost appreciation for MAI as a *philosophy* of jury instruction, or of the prior instructional "quagmire which made the development of the MAI necessary." *Kindle v. Keene*, 676 S.W.2d 82, 84 (Mo.App. 1984). But another may be appellate opinions that abbreviate the "ultimate test" of a not-in-MAI instruction as being "whether it follows the substantive law and can be readily understood." [11] That is true so far as it goes, but fails to fully capture the test. *See Berger*, *Pisoni*, MAI Why and How.

It is more complete and accurate to say that *if* a not-in-MAI instruction is *needed* to properly submit a case (not just *wanted* by a party seeking an edge), it must track applicable substantive law and be readily understood by the jury. *See Am. Equity Mortg. v. Vinson*, 371 S.W.3d 62, 64 (Mo. App. 2012). That Instruction 9 was not needed (here or in *any* case) should have been a red flag, especially when it fit no MAI instruction category or Rule 70.02(b) instruction type.[12]

## Conclusion

Finding merit in Hale's appeal and none in BNSF's cross-appeal, we reverse the judgment and remand for further proceedings consistent with this opinion.

11. *See, e.g., Bayne v. Jenkins*, 593 S.W.2d 519, 530 (Mo. banc 1980); *Streeter v. Hundley*, 580 S.W.2d 283, 287 (Mo. banc 1979); *Southern Missouri Bank v. Fogle*, 738 S.W.2d 153, 157 (Mo.App. 1987).

12. Rule 70.02(b) describes just three types of jury instructions: MAIs, MAIs modified to fit a

NANCY STEFFEN RAHMEYER, C.J./P.J.—CONCURS

JEFFREY W. BATES, J.—CONCURS

particular case, and instructions not in MAI that *must be given because there is no applicable MAI*. To borrow a memory prompt from popular culture, when it comes to not-in-MAI instructions, "you can't always get what you want, . . . you get what you need."