**CHICAGO TITLE INSURANCE COMPANY and Community Federal Savings and Loan, Respondents,**

v.

**FIRST MISSOURI BANK OF JEFFERSON COUNTY and John A. Schneider, Appellants.**

No. 43454.

Missouri Court of Appeals, Eastern District, Division Three.

June 30, 1981.

John A. Schneider, Hillsboro, for appellants.

John Howald, James E. Bowles, Tim M. Finnical, Hillsboro, for respondents.

CRIST, Presiding Judge.

Appeal from an order of the trial court enjoining foreclosure of Lot 91 of Block C of Sandia Heights, a subdivision near Pevely, Missouri, and ordering the release of that lot from a lien of a deed of trust. We affirm.

Our review of this suit in equity is guided by *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976) and Rule 73.01. Hence, we shall only reverse if the judgment of the trial court is not supported by substantial evidence, is against the weight of the evidence, or is an erroneous application of the law. Credibility of witnesses is to be determined by the trier of fact. *Lytle v. Page*, 591 S.W.2d 421, 423 (Mo.App.1979). Where, as here, there is conflicting testimony, it is the trial court's role to sort out and resolve those conflicts. *Zoellner v. Carty*, 585 S.W.2d 289, 291 (Mo.App.1979). Therefore, where testimony conflicts we assume the trial court believed the testimony consistent with its finding.

To understand how Chicago Title Company and Community Federal Savings and Loan (hereinafter referred to as "title company" and "savings and loan", respectively) became involved in this controversy, the story must start at a rather distant beginning. In October of 1978, Kent Williams and his wife (hereinafter "builders") purchased land near Pevely, Missouri, with a loan from First Missouri Bank of Jefferson County (hereinafter "bank") secured by a first deed of trust. The promissory note called for monthly payments of interest and payment of $168,000.00 principal on demand or November 1, 1979.

Bank orally agreed to release individual lots from the deed of trust for $5,500.00. These payments satisfied a corresponding fraction of the interest and principal due on the note. Pursuant to that agreement, seven lots were released in the following year. As part of their development, builders caused a residence to be built on Lot 91.

Savings and loan entered the picture when builders approached it for a loan to pay the construction costs and purchase a release of Lot 91. Title company was brought in by savings and loan to insure title during the transfer. Savings and loan and title company engaged Hillsboro Title Company (hereinafter "agent") to act as their agent in this transaction. This was the eighth Sandia Heights lot on which agent, as lender's agent, sought a release from bank.

Agent telephoned bank on November 26, 1979 to confirm the release agreement on Lot 91. The loan secretary told them the release figure was $5,500.00. Thereupon

agent tendered bank a check for that amount and paid all the construction expenses, a total disbursement of approximately $24,000.00. Agent also caused title company to insure that savings and loan would receive a first deed of trust on Lot 91.

About a week later, agent discovered bank was advertising a foreclosure sale of several unreleased lots in Sandia Heights, including Lot 91. Agent telephoned bank to investigate. The chief executive officer told them builders were entitled to a release on Lot 91, but suggested they call the bank attorney. The bank attorney, who is the trustee in the deed of trust, also advised agent that builders were entitled to a release of Lot 91.

On December 13, 1979, about a week after these assurances and three weeks after tender of the release payment, bank returned the check and announced plans to proceed with foreclosure on Lot 91. Title company and savings and loan promptly filed this suit. This action prevented the foreclosure and sale of Lot 91, but 17 unreleased lots were bought at public auction by bank for $2,000.00 each.

Bank and trustee claim that there was no evidence that the release agreement would continue if the loan were in default. The record belies this position. Bank's chief executive officer testified that the interest payments were continually delinquent, yet seven lots were released during that year. Immediately prior to disbursement, and again several days later, the release agreement was confirmed by bank in phone conversations.

 Bank and trustee argue that Missouri's Statute of Frauds, § 432.010, RSMo. 1978, prevents enforcement of the oral contract to release Lot 91. Savings and loan and title company counter this by claiming equitable estoppel. The party asserting equitable estoppel must have changed its position for the worse in reliance on the representation or conduct of the person sought to be estopped. *Martinelli v. Security Ins. Co. of New Haven*, 490 S.W.2d 427, 433 (Mo. App.1972). Equity will intervene to pre-

vent gross injustice. *Jones v. Linder*, 247 S.W.2d 817, 819 (Mo.1952).

Bank is estoppel from denying the contract or asserting the Statute of Frauds after inducing savings and loan and title company to rely on bank's assurances to their detriment. Based on bank's practice and assurance, agent disbursed $19,500.00 for improvements on Lot 91. These improvements raised the value of Lot 91 to $31,500.00. It would be unconscionable to allow bank to induce these expenditures, then repudiate its release agreement and take a windfall.

The order of the trial court is affirmed.

REINHARD and SNYDER, JJ., concur.