EMPIRE GAS CORPORATION, a
Missouri corporation, et al.,
Plaintiffs-Respondents,

v.

SMALL'S LP GAS COMPANY, et al.,
Defendants-Appellants.

Nos. 12215, 12483.

Missouri Court of Appeals,
Southern District,
Division Three.

June 11, 1982.

Motion for Rehearing or to Transfer to Supreme Court Denied July 6, 1982.

Application to Transfer Denied
Sept. 13, 1982.

James Robertson, Edward Tynes Hand, Bruce M. Berman, Wilmer, Cutler & Pickering, Washington, D. C., for plaintiff-respondent Empire Gas Corp.

John Hall Dalton, J. Michael Mowrer, Dalton, Treasure & Mowrer, Kennett, for plaintiffs-respondents Empire Gas Corp. and Jerry L. Redfern.

Michael O'N. Barron, St. Louis, James E. Reeves, Ward & Reeves, Caruthersville, for defendants-appellants E. T. Small, Julia T. Small, Eric T. Small and Craig T. Small.

TITUS, Judge.

Empire Gas Corporation (Empire) and its trustee petitioned the Dunklin County Circuit Court to foreclose security interests in

real and personal property given by Small's LP Gas Company (Small's) as part of a transaction involving Small's purchase from Empire of liquid propane (LP) gas facilities situate in Malden, Sikeston and Lilbourn, Missouri. Also named as defendants were members of the Small family by reason of their personal guaranty given for Small's performance of its obligations. Small's and its guarantors answered and counter-claimed for fraudulent misrepresentation as to the number of consumer LP gas tanks which Empire purportedly represented were involved in the sale of the three facilities. The counterclaim was jury-tried and result-ed in a $650,000 verdict for defendants. Empire's foreclosure suit was tried to the court. Following this and pursuant to trial and after-trial motions, the trial court sus-tained Empire's motion on the counterclaim for judgment notwithstanding the verdict and conditionally sustained Empire's motion for a new trial because of an instruction error. With respect to Empire's foreclosure suit and after allowing the defendants a $457,000 credit for lost or unconfirmed con-sumer LP gas tanks, the circuit court en-tered judgment for Empire and against Small's and the individual defendants in the sum of $1,358,045.90. Both actions of the trial court were denominated as final judg-ments for purposes of appeal. Small's did not appeal[1] but the individual defendants did and their appeals were ordered consoli-dated in this court.

The sale of the three plants by Empire to Small's on March 27, 1979, was evidenced by a duly executed "Agreement for Sale of Corporate Assets" and an attached duly ex-ecuted "Addendum to Agreement for Sale of Corporate Assets." By the agreement Empire agreed to sell and Small's agreed to buy the three plants for $1.3 million, with no money down and the principal, plus in-terest, to be paid in 120 monthly install-ments pursuant to a promissory note an-nexed to the agreement. The note was secured by Small's assignment to Empire of security interests in real and personal prop-erty pursuant to a deed of trust and two security agreements and the personal guar-anty for Small's performance executed by members of the Small family. By the ad-dendum (requested by Small's) it was agreed, inter alia, that Small's would have 60 calendar days from the closing date to verify the existence of the number of con-sumer LP gas tanks listed as being sold and that Empire would thereafter have a like period in which to confirm or find any tanks that Small's was unable to locate. The addendum further provided that if the number of tanks thus found was less than the number listed, Empire would credit Small's payments with the value of the missing tanks plus interest. However, if the found tanks exceeded the number list-ed, the excess tanks would be returned to Empire.

The necessary elements of Small's cause of action to be proved were: (1) Em-pire's representation to Small's that the three LP plants being sold "had more than 2,800 liquid propane gas storage tanks;" (2) the falsity thereof; (3) its materiality; (4) Empire's knowledge of its falsity; (5) its intent that the representation should be acted on by Small's in the manner reason-ably contemplated; (6) Small's ignorance of its falsity; (7) Small's reliance on its truth; (8) Small's right to rely thereon; and (9) Small's consequent and proximate injury. *Cotner v. Blinne*, 623 S.W.2d 615, 616[1] (Mo.App.1981); *McGuire v. Bode*, 607 S.W.2d 165, 166[1] (Mo.App.1980). For Small's to make a case on fraudulent mis-representation, it had a particularly heavy burden of proving [*Cantrell v. Superior Loan Corp.*, 603 S.W.2d 627, 634[2] (Mo.App. 1980)] each of the nine elements, supra. *Yerington v. Riss*, 374 S.W.2d 52, 57[3] (Mo. 1964). Albeit it is seldom susceptible of proof by direct evidence, fraud is never to be presumed [*Miller v. Higgins*, 452 S.W.2d 121, 124[3] (Mo.1970)] and the establish-ment of each of the nine elements of fraud enumerated above is necessary for recovery,

---

**1.** Dehors the record it is represented that Small's filed a voluntary bankruptcy petition in the federal bankruptcy court on the same date the court nisi, as previously announced, ren-dered its judgment of foreclosure.

as a failure to establish any one single element is fatal to recovery. *Kreutz v. Wolff*, 560 S.W.2d 271, 278[13] (Mo.App. 1977); *Fredrick v. Bensen Aircraft Corporation*, 436 S.W.2d 765, 769[2] (Mo.App.1968).

Eric Small assumed "management duties" with Small's about 1974 and was its manager and negotiation representative concerning the purchase from Empire in 1979. At trial Small was asked as to what had occurred before the sale and purchase papers were executed relative to the number of consumer LP gas tanks involved and which ostensibly were listed on three computer printouts "placed with the contract." In answer thereto Small testified Empire's representative stated that with the possible exception of about 20 tanks all could be found, but added: "If there is [any tanks missing] we'll take care of it. It would be our problem. We'll take it off the purchase price, and we'll handle the situation or something like to that effect." In partial keeping with this assurance and at Small's insistence, the executed addendum to the contract, as above noted, provided that after closing, Small's had 60 days to verify the existence of the tanks listed as being sold and that thereafter Empire would have 60 days to verify Small's missing tank claims. The addendum bound Empire to credit Small's on the purchase price of the three plants with the value of all tanks discovered by both to be lost or missing.

After completion of the transaction in March 1979, Small's operated the three LP plants. However, it made only one principal payment and one interest payment, approximately $26,000, on its $1.3 million obligation to Empire. In May 1979, Small's told Empire 1,300 consumer tanks were "lost" [At trial Eric Small testified that when this message was transmitted, about 200 additional tanks had actually been found]; the court calculated the value of such tanks to be $457,000.[2] Following Small's May 1979 notice to Empire concerning "lost" tanks, Empire found many such

tanks but failed to find others. In any event, as Small's had made but one principal and interest payment on its indebtedness Empire filed its petition to foreclose the deed of trust, security agreements, etc., on December 20, 1979.

■■■ Before a party may be permitted to recover for false and fraudulent representations, it must be established that the one allegedly defrauded relied upon the truth of the representations claimed to be false. *Hereford v. Unknown Heirs of Tholozan*, 315 S.W.2d 412, 421[8] (Mo.1958); *Younger v. Hoge*, 211 Mo. 444, 458, 111 S.W. 20, 23[4] (1908); *Hutchings v. Tipsword*, 363 S.W.2d 40, 47[11] (Mo.App.1962); 37 C.J.S. Fraud, § 29, pp. 269–270. Where there is a mutual recognition of the uncertainty of a given fact, it cannot be said that either party relied on or had a right to rely upon that fact. Reliance upon representations is an essential element in an action for fraud and absent that element no cause of action for fraud exists. *Ralston Purina Co. v. Swann*, 161 S.W.2d 39, 41[2] (Mo.App. 1942).

■■■ Accepting Eric Small's testimony that Empire's representative initially stated that all the involved customer LP tanks save 20 could be located, this statement was immediately followed by and made a part of assurances that should any tanks be found missing Empire would take care of the matter by deducting the value of the missing tanks from the sale price. The truth or falsity of statements should not be wrung from isolated portions thereof but rather from the entire utterance. All doubts should be entertained in favor of good faith in determining whether an entire statement constitutes a misrepresentation. *Emily v. Bayne*, 371 S.W.2d 663, 667 (Mo. App.1963). But even assuming, which we do not, that the isolated assurance by Empire that all but 20 tanks could be located, it is plain there was a failure of proof that Small's did, in fact, rely upon that precontractual representation. If Small's did in-

2. This, as previously noted, was the same sum which the trial court credited to Small's in the

foreclosure suit for lost or unconfirmed tanks.

deed rely upon that particular representation, why did it insist upon and secure inclusion of the addendum which, in effect, provided that Small's would be obligated to pay for only those tanks whose existence could be confirmed after a post-contractual 120 day investigation by both buyer and seller? In legal effect, the addendum amounted to a contractual agreement that Small's was not to rely on the representations made by Empire but was to rely upon its own and Empire's investigation which both had a legal duty to make. *Bank of America National Trust & Sav. Ass'n v. Vannini*, 140 Cal.App.2d 120, 295 P.2d 102, 108 (1956). As the addendum obligated Small's only to pay for such tanks as could actually be found within 120 days after execution of the agreement, Empire's alleged oral representation as to the quantity did not amount to a fraudulent representation to induce sale of the three plants because Small's was only required to pay for the number of tanks actually found within the time specified. *Friedman v. Citizens' Natural Gas, Oil & Water Co.*, 82 Ind.App. 667, 147 N.E. 294, 296 (1925). We conclude and hold that the court nisi correctly sustained Empire's motion for judgment notwithstanding the verdict on the counterclaim and affirm the judgment thus entered.

We now consider the separate notice of appeal filed by the individual members of the Small family from the designated final judgment entered in favor of Empire in its foreclosure action. In appellants' brief filed herein, their points relied on [mislabeled "Points and Authorities" contrary to Rule 84.04(d)][3], read as follows: "I. The Trial Court Erred in Designating the Judgment Entered on September 4, 1981 a Final Judgment. II. Empire's Fraud, Breach of Contract and Unconscionable Conduct Deprived it of any Right to Equitable Relief, Foreclosure of Deeds of Trust and Security Agreements and Judgment on the Promissory Note. III. The Trial Court erred in permitting recovery on the Note and Fore-

closure of the Security Instruments which were void by reason of Empire's fraud, Mutual Mistake and inadequacy of Consideration. A. [Empire is] barred from recovering on the Promissory Note, Deeds of Trust and the Security Agreements against Small's and Appellants by reason of a failure or an inadequacy of consideration. B. ... by reason of the mutual mistake of the Parties. C. ... by reason of Empire's fraud. D. Empire should not be permitted to Escape the consequences of its acts by rigid application of the Doctrine of Election of Remedies. IV. The Trial Court erred in finding that Small's had defaulted under the terms and conditions of the Promissory Note, Deeds of Trust and Security Agreements. A. Small's has not improperly failed to make payments of principal and interest as required by the Promissory Note. B. Empire has not established that Small's made or furnished Financial Information which was false in any material respect. C. Small's advised Empire of its change of management and plaintiff's waived their right to claim and default based on that change. D. Small's is not in default by reason of its movement of collateral or sale of vehicles. E. The Trial Court erred in finding that Empire's belief that the prospects of payment on the Promissory Note were impaired and its deeming itself insecure justified acceleration of the Promissory Note. V. The Trial Court erred in finding that the appellants are liable to Empire as guarantors of the Promissory Note. VI. The Trial Court erred in finding that the credit of $457,000 was necessarily included in the verdict of the jury entered on December 6, 1980 and that the credit of $457,000 is made in place of such jury verdict. VII. The Trial Court erred in failing to award Small's its costs and reasonable attorney fees resulting from Empire's fraud, deceit and breach of contract and in awarding Empire attorney fees of $123,459."

---

**3.** References to rules and statutes are to Missouri Rules of Court, V.A.M.R., and RSMo 1978.

■ Any reader hereof even slightly acquainted with the requirements of Rule 84.04(d), which are mandatory [*Pickett v. Stockard*, 605 S.W.2d 196, 197[2] (Mo.App. 1980) ], will quickly conclude that not one of the appellants' points relied on, supra, constitute anything more than abstract assertions of transgressions with no effort whatever to declaim wherein and why the obtuse pronouncements constituted trial court error. It is not enough for points to state what rulings or actions by the trial court complained of were error via conclusions of law or fact, for some evidence or testimony must be stated in the points relied on which isolates and gives support to the conclusions. *In re Estate of Sifferman*, 603 S.W.2d 30, 31[1] (Mo.App.1980). As written, each and all of appellants' points relied on violate Rule 84.04(d). This violation would justify dismissal of their appeal. However, since previous notice of the violation was not given, accompanied by an opportunity to correct the errors, all as provided by Rule 84.08, we are constrained to ignore the wrongs and consider the points upon their merits, if any.

■ I. It seems anomalous that the parties who filed the notice of appeal and pursued it now contend the judgment was not a final judgment from which an appeal would lie. Appellants by argument say the judgment was not final because it did not completely dispose of Empire's allegations concerning lien priorities of some of Small's other creditors named as defendants in the foreclosure action for the purpose of resolving lien priorities. This ignores that the court nisi specifically designated the foreclosure judgment as "a Final Judgment for purposes of appeal" which it alone had the right to do under Rule 81.06. Resolution of claims or disputes among Empire and Small's other creditors was not first necessary in order to make a final disposition of the issues which concerned only Empire, Small's and the appellants herein. The trial court's declaration that the judgment rendered and entered on the issues peculiar to Empire, Small's and appellants was final for the purpose of appeal made the judgment appealable. *Spires v. Edgar*, 513

S.W.2d 372, 373–377[3] (Mo. banc 1974). Appellants' point is denied.

■ Before attending to the other points relied on we again note that "[i]n this court-tried case '[o]ur review is governed by Rule 73.01 ... as set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and we are not to disturb the lower court's judgment unless it is against the weight of the evidence, is not supported by substantial evidence, or erroneously declares or applies the law. Before we conclude a judgment in a court-tried case is against the weight of the evidence we must entertain a *firm belief* the judgment is wrong. And, we are to give due regard to the opportunity to the trier of fact to have adjudged the credibility of the witnesses. The trial court's resolution of conflicting evidence is to be accorded due deference by the reviewing court. *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481 (Mo. banc 1980).' *Commerce Bank of Poplar Bluff v. Bulger*, 614 S.W.2d 768, 769[1–3] (Mo.App. 1981). Furthermore, the trial judge has leave to believe all, part or none of the testimony of any witness [*Long v. Lincoln*, 528 S.W.2d 512, 513 (Mo.App.1975) ] and where there is a conflict in the testimony, we assume the trial court believed the testimony consistent with its findings. *Chicago Title Ins. Co. v. First Missouri Bank of Jefferson County*, 622 S.W.2d 706, 707 (Mo. App.1981)." *McClelland v. Williamson*, 627 S.W.2d 94, 96[1, 2] (Mo.App.1982).

In addition to the shortcomings previously noted in the points relied on in appellants' brief, we additionally observe that with the exceptions of points IV and VI, there is not one page reference to the transcript in the argument portion of the brief. This is a clear violation of the requirements of Rule 84.04(h) which is compounded by the fact that the two-volume transcript on appeal consists of 511 pages. Consequently, if any misconception arises as to what intended precise testimony appellants allude in their arguments, such misconception can only be blamed upon appellants because of their blatant rule infractions.

II. The argument under this point in appellants' brief is no more illuminating than the abstraction presented by the point. Appellants' argument merely rambles legal conclusions and axioms without once referring to any trial testimony or evidence proffered by either side which demonstrates, or even hints, why Empire's alleged, but unspecified, fraud, breach of contract and unconscionable conduct deprived it of recovery. Appellate courts should not be obliged to consider abstract arguments which do not specifically apply themselves to any undesignated evidence offered at trial and which only expound legal generalities not specifically referable to any explicit averred error in the cause. We decline to undertake such an unfathomable chore and deny the point.

■ III. A, B, C and D. In the argument portion of their briefs appellants base their failure of consideration defense on the faulty assumption it was uncontroverted at trial that the three plants Empire sold to Small's "were to include over 2800 LP gas storage tanks in service with customers" and that the plants were "making sufficient profits to pay for themselves." In the fifth, sixth and seventh paragraphs of this opinion, supra, we recounted the testimony and evidence anent the number of LP gas tanks supposedly involved in the sale and Small's lack of reliance on any averred representations thereof because of its insistence for the contract addendum which made it liable to pay for only such tanks as could be found by either party within 120 days after execution of the agreement. At trial it was disputed that Empire's agent had represented that the plants were profitable. Again we note that in court-tried cases the trial judge, as arbiter of the facts, may disbelieve and reject any portion of the oral testimony even though the rejected portion goes uncontradicted. *Intertherm, Inc. v. Coronet Imperial Corp.*, 558 S.W.2d 344, 348[3] (Mo.App. 1977). Moreover, proof of consideration is not required of an obligee who brings an action on a written agreement which imports a consideration per § 431.020. Obligors claiming there is a want or failure of

consideration, must not only plead such an assertion but must establish it by a clear preponderance of credible evidence and their proof must be cogent and convincing. *Gover v. Empire Bank*, 574 S.W.2d 464, 468[3] (Mo.App.1978). The court nisi correctly rejected appellants' failure of consideration defense. Furthermore, it is only when consideration for the contract *wholly* fails that the contract becomes unenforceable. In other words, even if there be partial failure of consideration, yet if there is a substantial consideration left it will be sufficient to sustain the contract. 17 C.J.S. Contracts, §§ 129 and 130, pp. 848–852. There was *no* evidence of total failure of consideration.

■ Appellants' contention the transaction was based on mutual mistake is in no way supported by any portion of the argument part of their brief and wholly ignores that appellants' counterclaim for damages, which was pursued to its ultimate end via judgment, served, by election, to bar the claim that enforcement of the transaction was prohibited because of mutual mistake. *Timmons v. Bender*, 601 S.W.2d 688, 690[1, 2] (Mo.App.1980). The point is denied.

The point by appellants that Empire's recovery should be barred because of its alleged fraud has been thoroughly discussed and decided against appellants at the commencement of this opinion and need not be repeated. As to appellants' contention that Empire should not be permitted to escape the consequences of its act by application of the doctrine of election, they argue, in effect, that the promissory note and their guarantee contract were two separate and distinct documents. While admitting they were parties to the counterclaim, appellants say they did not individually state a cause of action against Empire on the contract. This assertion denies the fact that appellants were actual parties to the counterclaim, urged the contract was procured by fraud and, together with Small's, were awarded $650,000 in damages by the verdict and judgment which was later vacated. The point has no merit.

IV. A, B, C, D and E. Appellants' contention anent its alleged lack of default in making payments of principal and interest, has this background. The contract in question was made in March 1979 and the foreclosure judgment was rendered September 4, 1981. Ergo, Small's had been operating the three LP gas plants in excess of two years before the matters in dispute were resolved. Under the agreement and addendum, Small's was to pay Empire $1,300,000 for the plants (together with interest) in 120 monthly installments of $10,833.33 each starting May 22, 1979, but if the number of customer LP gas tanks found by both buyer and seller within 120 days after the contract date proved to be less than enumerated by the attached exhibits, Small's was to "be entitled to a credit on its monthly payment or payments in an amount equal to their scheduled values together with accrued interest *from the date of closing until the date of reconciliation*." (Emphasis added). In May 1979 Small's made a $10,833.33 principal payment and in July 1979 it made a $15,751.32 interest payment for a total of $26,584.65. No other payments of principal or interest were ever made.

The court nisi, based on the foregoing, declared that the language of the contract and addendum "provided for the accrual each month of the life of the contract of interest on the contract price, as reduced by the value of any unverified or unconfirmed tanks. Thus, in this case, the contract price of $1,300,000 is reduced to $843,000 by the credit of $457,000. Interest was to accrue on the reduced principal amount from and after 120 days after closing (the longest period provided by the contract for reconciliation of the tanks) . . . ."

▮ Appellants contend the court's finding, supra, was error because Small's was entitled to apply the $457,000 credit (although the amount thereof had not been then determined) against its monthly payments at the rate of $10,833.33 per month, thereby excusing it from making any payments of principal or interest for 46 months after it took possession of the plants. The trial court rejected this interpretation

which would, in effect, have given Small's the three plants and their assets, ultimately valued at $843,000, for some four years before Small's became obligated to make any payments whatever. An interpretation of a contract which evolves unreasonable results, when a more probable and reasonable construction can be adopted, will be rejected. Moreover, where a contract (here the addendum) is fairly open to more than one interpretation it will be construed against the party that prepared it, in this case Small's. *Standard Meat Co. v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592, 596[10 and 12] (Mo.App.1977), and authorities there cited. We reject appellants' urgings in favor of the court's interpretation.

The trial court also declared Small's was in default under the note because it provided false information prior to note-execution regarding Small's long-term liabilities. The note specified that Small's would be in default if any financial information furnished to Empire by or on behalf of Small's proved to have been false in any material respect. Findings by the circuit court that Small's had made material financial misrepresentations cannot be successfully disputed. At the same time Small's was asking Empire to accept its note for the $1.3 million sale-purchase price of the three LP plants, it was concealing the fact that it had long-term liabilities to others equal to more than 30 percent of sale-purchase price of the plants. Appellants' point is denied.

▮ Appellants' contention, based on waiver, that Empire could not successfully claim that Small's was in default, because, without Empire's prior approval as required by the note and deed of trust, it changed management in Small's by permitting one Estes in August 1979 to become president and chief executive officer of Small's is without merit. Waiver is an affirmative defense and must be pleaded as such. This was not done and, thus, has not been preserved for our review. *Westinghouse Elec. Co. v. Vann Realty Co.*, 568 S.W.2d 777, 781[4] (Mo. banc 1978).

We need not, and do not attend to appellants' last two conclusionary contentions as

to why the trial court allegedly erred in finding that Empire was entitled to foreclosure. Even assuming, which we do not, that the court erred in its two ending reasons, we have above demonstrated its other reasons for approving foreclosure were alone amply valid and need not be augmented by determining the validity vel non of appellants' penultimate and final contentions.

V. Appellants' claim that the court nisi erred in finding them "liable to Empire as guarantors of the Promissory Note," outshines all other points relied on for being abstractive. The gist of appellants' argument is that as Small's was not in default, the appellants as guarantors would have no liability. This, in effect, apes some of the argument advanced under point IV. We deny point V for what we have said anent point IV.

VI. The writer hereof confesses inability to understand this point as written. Wherein and why, as required by Rule 84.-04(d), the trial court erred in finding the credit of $457,000 (the sum which Small's advised Empire was the value of the "lost" consumer tanks) was necessarily included in the $650,000 verdict returned on the counterclaim is not explained. Also, wherein and why it is contended the trial court erred in giving Small's and appellants a $457,000 credit in the foreclosure action and wherein and why this was prejudicial to Small's and appellants is left for us to guess. Our confusion, in part, stems from the fact that the counterclaim for fraud-damages was principally predicated on Empire's alleged fraudulent representation that "over 2,800 liquid propane gas storage tanks" were included in the sale. Clearly there was no error in finding the $457,000 credit for lost tanks allowed Small's and appellants in the foreclosure action was necessarily included in the $650,000 verdict on the counterclaim. Point VI is denied.

VII. Appellants' final claim is that the trial court erred in failing to award Small's reasonable attorney's fees and in awarding such to Empire. The argument portion under this abstraction offers little legitimate illumination to appellants' contentions. As a general rule, attorneys' fees are recoverable only when provided for by statute or contract. *Julian v. Burrus*, 600 S.W.2d 133, 141[11] (Mo.App.1980). In the instant case the note and security instruments signed by Small's and personally guaranteed by appellants, contained Small's agreement to pay Empire reasonable attorney fees in the event Small's defaulted and Empire was obliged to employ counsel to obtain repayment of the debt. In its foreclosure petition Empire specifically asked the court to award it reasonable attorney fees based upon Small's contractual obligation, costs and expenses of executing the deed and expenses incurred in retaking, holding, preparing for sale, selling, etc. the property secured by the contracts. Therefore, Empire, both by contract and the prayers of its pleading if its cause was proved, which it was, was entitled to attorney fees. Although appellants do not question the amount of the attorney fees awarded Empire, we note the trial court is considered to be an expert on attorney fees, that it may fix such fees within its sound discretion and its determination will not be reversed absent a showing the compensation allowed was a manifest and clear abuse of such discretion. On the record here, there is no showing or claim the trial court abused its discretion in fixing the fee for Empire's attorneys. *Nelson v. Hotchkiss*, 601 S.W.2d 14, 21[16–21] (Mo. banc 1980). Appellants' final point is denied and the judgment is affirmed.

FLANIGAN, J., concurs.

MAUS, P. J., concurs in result only.