# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3728
_____

Tension Envelope Corporation

*Plaintiff - Appellant*

v.

JBM Envelope Company; Marcus G. Sheanshang; Daniel J. Puthoff

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 20, 2017
Filed: December 8, 2017

_____

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Tension Envelope Corporation sued a former supplier, JBM Corporation, for selling directly to its customers after promising not to do so. The district court[1]

---

[1] The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

rejected one claim on the pleadings and the others on summary judgment. We affirm the district court's rulings.

## I.

Tension and JBM manufacture and sell envelopes. In late 2000 or 2001, Tension began buying from JBM a special type of envelope—small, open-end envelopes[2]—to resell to customers. Three of Tension's customers accounted for a significant percentage of the sales.

According to Tension, JBM offered assurances that it would not sell directly to Tension's customers. On three separate occasions, however, JBM refused to sign a non-compete agreement. After these refusals, Tension continued to order envelopes from JBM with individual purchase orders. Tension even leased its manufacturing equipment to JBM to produce the envelopes.

Although JBM had sold some envelopes to end users since at least 2001, JBM's new management in 2011 decided to increase direct sales. By 2014, JBM

---

[2] In Tension's opening brief, it describes the different varieties of envelopes as follows:

> Envelopes can be divided into one of two types: open side or open end. A traditional mailing envelope used, for example, to pay bills—and which closes with a flap on the long side of the envelope—is known as an "open side" envelope. Contrast this with the typical interoffice envelope, which closes with a flap on the short end of the envelope, and which is known as an "open end" envelope. Within the category of open end envelopes there is a type of sub-specialty envelope known as small, open end envelopes. Examples of small, open end envelopes include coin envelopes and hotel key card envelopes.

Opening Br. 4-5 (citations omitted).

decided to sell directly to Tension's customers.  JBM hired a communications consultant to help with the strategy.  The strategy worked, and by June 2014, JBM reached agreements with two of Tension's three large customers.  JBM later tried to sell to the third large customer's customers.  Tension learned of the agreements—though it earlier had suspected something was afoot—and struggled to find a new supplier.

Tension filed its complaint in June 2014.  It later filed three amended complaints and named JBM and two of JBM's corporate officers (collectively "JBM") as defendants.  The district court dismissed under Federal Rule of Civil Procedure 12(b)(6) a claim for misappropriation of trade secrets.  After discovery, the district court granted JBM's summary judgment motion on every remaining claim.  Tension appealed.[3]

## II.

On appeal, Tension advances seven arguments.  Six relate to the district court's summary judgment grant.  Tension argues that the district court erred in granting summary judgment on its claim for (1) breach of contract, (2) promissory estoppel, (3) fraudulent misrepresentation, (4) fraudulent nondisclosure, (5) tortious interference, and (6) unfair competition.  Tension's final argument relates to the district court's dismissal under Rule 12(b)(6) of its misappropriation of trade secrets claim.

We will address each claim in turn and review *de novo* the district court's rulings.  *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002).  In reviewing the

---

[3] The parties filed their briefs and appendix under seal.  A number of filings in the district court are sealed as well.  "We conclude that it is unnecessary to seal this opinion, however, as it contains no information that we deem confidential." *Rakes v. Life Inv'rs Ins. Co. of Am.*, 582 F.3d 886, 892 n.6 (8th Cir. 2009).

motion to dismiss, we accept "well-pleaded allegations in the complaint as true" and draw "all reasonable inferences in favor" of Tension. *See Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). In reviewing the grant of summary judgment, we ask whether "there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Turner*, 278 F.3d at 757 (citing Fed. R. Civ. P. 56(c)). The parties agree that the substantive law of Missouri governs the dispute. *See Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 904 n.2 (8th Cir. 2013).

## A. Breach of Contract

Tension first argues that JBM breached a requirements contract in selling directly to its customers. Under Missouri law, a requirements contract is "one in which one party promises to supply all the specific goods or services which the other party may need during a certain period at an agreed price, and the other party promises that he will obtain his required goods or services from the first party exclusively." *Essco Geometric v. Harvard Indus.*, 46 F.3d 718, 728 (8th Cir. 1995) (emphasis omitted) (quoting *Kirkwood–Easton Tire Co. v. St. Louis Cty.*, 568 S.W.2d 267, 268 (Mo. 1978) (en banc)). Tension contends that the purported contract required JBM "to use its best efforts to supply the envelopes" to Tension and provide "reasonable notice" before terminating the agreement. According to Tension, JBM breached both provisions when it started selling directly to Tension's customers.

The district court concluded that no enforceable requirements contract existed between the two companies, *see Tension Envelope Corp. v. JBM Envelope Co.*, No. 14-567-CV-W-FJG, at 19 (W.D. Mo. Aug. 22, 2016), and we agree. Under the Missouri statute of frauds, and with exceptions not relevant here,

> a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some

> writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

Mo. Ann. Stat. § 400.2-201. Tension concedes that the purported contract involves a sale of goods for more than five hundred dollars. So Tension must proffer some writing "sufficient to indicate" that an agreement was reached. *See id.*

Tension attempts to do so with two documents. The first is a letter from JBM's president to a Tension representative stating that "Tension and JBM have a partnership in which Tension has shared machinery and knowledge with JBM." The second document is a promotional piece noting that "[o]ver the years, the relationship and trust between Tension and JBM has grown into a partnership."

These documents do not satisfy the statute of frauds. Recall that a requirements contract is "one in which one party promises to supply all the specific goods or services which the other party may need during a certain period at an agreed price, and the other party promises that he will obtain his required goods or services from the first party exclusively." *Essco Geometric*, 46 F.3d at 728 (emphasis omitted). Tension's proffered documents do "not contain any terms" referencing those elements. *See Howard Const. Co. v. Jeff-Cole Quarries, Inc.*, 669 S.W.2d 221, 230 (Mo. Ct. App. 1983). Tension points to testimony supporting its favored interpretation of the word "partnership," but we cannot consider oral evidence in determining "whether the statute of frauds requirements have been met." *See id.* at 229. Without that evidence and without any documents beyond those containing bare references to "partnership,"[4] we cannot conclude that Tension has satisfied the statute

---

[4] In a footnote and without elaboration, Tension argues that the individual purchase orders satisfy the statute of frauds. But Tension has not identified any purchase order—in the record or elsewhere—sufficient to indicate a requirements contract. Tension also argues that a district court decision supports its statute-of-frauds contentions. *See Upsher-Smith Labs., Inc. v. Mylan Labs., Inc.*, 944 F. Supp.

of frauds. As a result, Tension and JBM have no enforceable requirements contract as a matter of law.

## B. Promissory Estoppel

Tension next seeks relief under the doctrine of promissory estoppel, but the Missouri statute of frauds bars this claim as well. When the statute of frauds bars a contract claim, allowing recovery based on Missouri's promissory estoppel "would abrogate the purpose and intent of the legislature in enacting the statute of frauds and would nullify its fundamental requirements." *Sales Serv., Inc. v. Daewoo Int'l Corp.*, 770 S.W.2d 453, 457 (Mo. Ct. App. 1989). "In fact," one district court concluded, "no Missouri Court has revived a claim barred by the Statute of Frauds using the doctrine of promissory estoppel." *Essco Geometric, Inc. v. Harvard Indus., Inc.*, No. 90-1354C(6), 1993 WL 766952, at *4 (E.D. Mo. Sept. 30, 1993), *aff'd sub nom. Essco Geometric v. Harvard Indus.*, 46 F.3d 718 (8th Cir. 1995). An "extraordinary" circumstance could warrant an exception to this general rule, *see Geisinger v. A & B Farms, Inc.*, 820 S.W.2d 96, 99 (Mo. Ct. App. 1991), but these facts are not extraordinary. Tension voluntary outsourced its manufacturing to a company that repeatedly refused to sign a non-compete agreement.

## C. Fraudulent Misrepresentation

Tension also brings a claim for fraudulent misrepresentation. That claim has nine elements under Missouri law:

---

1411, 1425-26 (D. Minn. 1996). But the writing there expressly attempted to "summarize what ha[d] been agreed upon" and "detail[ed] the material terms of the parties' purported agreement." *Id.* Tension has pointed to no similar document here.

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438-39 (8th Cir. 2013). "A plaintiff's failure to establish any one of the essential elements of fraud is fatal to recovery." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 132 (Mo. 2010) (en banc).

Tension focuses on three alleged misrepresentations. The first concerns JBM's 2012 statement that it would be a good partner because it was a "trade only manufacturer." Whether this statement qualifies as a misrepresentation depends on its meaning—about which some dispute exists. In its opening brief, Tension writes that "references to selling to the 'trade' refer to selling to 'other envelope companies.'" If Tension sold "only" to the trade, then presumably it would sell "only" to other envelope companies. Tension knew from the beginning of the relationship, however, that JBM sold directly to some end users. Tension's chief operating officer acknowledged that he "knew continuously from 2001 to 2014 that [JBM] sold to direct end users." So if "trade only manufacturer" has the meaning Tension apparently ascribed to it in the briefs, then Tension cannot claim "ignorance of the falsity of the representation." *See Freitas*, 703 F.3d at 438-39.

If we instead look to the record, "trade only manufacturer" appears to have a different meaning. Both Tension and JBM state there that "trade-only envelope manufacturers also have direct accounts." According to Tension, JBM's statement that it qualified as a "trade only manufacturer" was a misrepresentation, because JBM possessed a "present intent" in 2012 to cease operating as a trade-only manufacturer.

*See Sofka v. Thal*, 662 S.W.2d 502, 507 (Mo. 1983) (en banc) (noting that a "promise accompanied by a present intent not to perform is . . . sufficient to constitute actionable fraud" (emphasis omitted)).  The record does suggest that as far back as 2011, JBM planned to increase direct sales.  But if a "trade only manufacturer" need not sell only to the trade, then it is unclear—at least from Tension's briefs—at what point increasing direct sales renders the trade-only designation false.  Without a definite meaning for the term, Tension has failed to sufficiently show "falsity."  *See Freitas*, 703 F.3d at 438-39; *see also* Fed. R. Civ. P. 56(c)(1).  Because no "reasonable jury could return a verdict" for Tension on this claim, the district court did not err in granting summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.").

Even if Tension did sufficiently show falsity, Tension would have lacked the "right to rely" on the statement.  *See Freitas*, 703 F.3d at 438-39.  A "mutual recognition of the uncertainty of a given fact" renders reliance on the asserted fact unjustified.  *See Empire Gas Corp. v. Small's LP Gas Co.*, 637 S.W.2d 239, 243 (Mo. Ct. App. 1982).  That was the conclusion of the Missouri Court of Appeals in *Empire Gas Corp. v. Small's LP Gas Co.*, where a seller had reached a written agreement with a buyer delineating their respective rights in the event a particular representation by the seller proved false.  *See id.* at 243-44.  If the buyer "did indeed rely upon that particular representation," the court asked, then "why did it insist upon" the separate agreement?  *Id.*  The same logic applies here.  Tension repeatedly asked that JBM sign a non-compete agreement, and JBM repeatedly refused.  If Tension did indeed rely upon the trade-only manufacturer designation, then why repeatedly insist on a

non-compete agreement?  These repeated attempts to reach an agreement, and repeated refusals, rendered any reliance unjustified as a matter of law.  *See id.*[5]

The second alleged misrepresentation involved a response to a question.  In March 2014, after a Tension representative asked what he could do for JBM, JBM's president responded: "Bring us more business."  We cannot see how this constitutes a misrepresentation at all.  Nothing supports the proposition that JBM necessarily would have rejected additional business from Tension.  Tension emphasizes that a statement conveying a "false impression" can qualify as a misrepresentation under Missouri law.  *See Wion v. Carl I. Brown & Co.*, 808 S.W.2d 950, 954-55 (Mo. Ct. App. 1991); *see also United Indus. Syndicate, Inc. v. W. Auto Supply Co.*, 686 F.2d 1312, 1318 (8th Cir. 1982).  But even if JBM's answer created a false impression—which we doubt—the false impression was that JBM would not compete with Tension.  For the reasons already described, Tension had no right to rely on such a representation given JBM's repeated refusal to sign a non-compete agreement.  *See Empire Gas*, 637 S.W.2d at 243-44.

The third alleged misrepresentation also involved a response to a question.  In June 2014, shortly before JBM approached Tension's customers, Tension asked JBM to copy it on all future communications with its customers.  JBM's president agreed—though he did not follow through.  Summary judgment was proper on this claim for a now-familiar reason.  By June 2014, Tension suspected that JBM would approach its customers, and especially at this late date, it had no right to rely on a statement suggesting otherwise.  *See id.*; *see also Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1020-21 (8th Cir. 2001) (reaching a similar conclusion

---

[5] Tension also implies that JBM's assertion that it would be a "good partner" could constitute a distinct misrepresentation.  To the extent Tension makes that argument,  the alleged falsity would flow from JBM's selling directly to Tension's customers.  This misrepresentation claim fails for the reasons described above.

under Minnesota law). JBM therefore was entitled to summary judgment on the fraudulent misrepresentation claim. *See Anderson*, 477 U.S. at 248.

### D. Fraudulent Nondisclosure

Tension's claim for fraudulent nondisclosure fares no better. A fraudulent nondisclosure claim involves the same nine elements as a claim for fraudulent misrepresentation, except "a party's silence amounts to a representation where the law imposes a duty to speak." *Hess v. Chase Manhattan Bank*, 220 S.W.3d 758, 765 (Mo. 2007) (en banc). Tension claims that JBM's failure to disclose its plans to increase direct sales amounted to fraud.

In the most analogous Missouri case, however, the court rejected a similar claim. In *Blaine v. J.E. Jones Const. Co.*, home purchasers filed suit against a developer for failing to disclose its plans to build a nearby apartment complex. 841 S.W.2d 703, 704 (Mo. Ct. App. 1992). The Missouri Court of Appeals overturned the jury verdict in favor of the purchasers. *Id.* In doing so, the court focused on the market effect of a contrary ruling. A "developer's decision about developing is not absolute but can and probably will change depending on the marketplace," it wrote. *Id.* at 709. "To saddle a developer with an affirmative duty to disclose these decisions as they vary would act as a straight jacket that the marketplace does not need." *Id.*; *see also Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n*, 666 F.3d 1099, 1108-09 (8th Cir. 2012) (reaching a similar conclusion under Iowa law). That same logic applies here.

In support of a disclosure duty, Tension invokes certain provisions of the Restatement (Second) of Torts § 551. *See id.* § 551(2)(b) & (c) (describing certain disclosure requirements). By their own terms, however, those provisions apply only "before the transaction is consummated." *Id.* § 551(2); *see also Hennepin Cty. v. AFG Indus., Inc.*, 726 F.2d 149, 153 (8th Cir. 1984). Tension claims that because

consummation "may be equated with substantial performance in the contract context," *see Hennepin Cty.*, 726 F.2d at 153*, and because JBM has not "substantially performed" under the purported requirements contract, JBM had a continuing disclosure duty. Yet we have already found that no enforceable requirements contract existed, and Tension has not argued that the purchase orders triggered the Restatement duty. As a result, Tension has not sufficiently demonstrated a duty under the Restatement.

Tension's other arguments are similarly unpersuasive. It argues that the fraudulent nondisclosure claim presents a fact issue that is "simply part of the ultimate jury question." *See United Indus. Syndicate, Inc. v. W. Auto Supply Co.*, 686 F.2d 1312, 1319 (8th Cir. 1982). But its sole authority for that proposition predates not only *Blaine*, but also the trilogy of 1986 Supreme Court cases "which requires courts to treat motions for summary judgment more hospitably." *Chicago Ins. Co. v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 929 F.2d 372, 373 n.4 (8th Cir. 1991). Tension has not raised a fact issue that "might affect the outcome of the suit," so granting summary judgment was not erroneous. *See Anderson*, 477 U.S. at 248. In its reply brief, Tension pivots and argues for a disclosure duty on other bases, but those arguments come too late. *See Neb. State Legislative Bd., United Transp. Union v. Slater*, 245 F.3d 656, 658 n.3 (8th Cir. 2001).

One final reason also supports summary judgment on this claim. Recall that for the fraudulent nondisclosure claim, Tension must establish the same nine misrepresentation elements, except "a party's silence amounts to a representation where the law imposes a duty to speak." *See Hess*, 220 S.W.3d at 765. In this case, *Empire Gas* provides an independent reason for granting summary judgment. Given JBM's repeated refusals to sign a non-compete agreement, Tension had no right to equate JBM's silence with a commitment not to compete. *See Empire Gas,* 637 S.W.2d at 243-44.

**E. Tortious Interference**

Tension also claims that JBM committed tortious interference in its attempts to sell directly to Tension's customers. "Tortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316 (Mo. 1993) (en banc). So long as the defendant does not employ improper means—such as threats, violence, trespass, defamation, restraint of trade, or misrepresentation of fact—economic interest provides sufficient justification for an alleged interference. *See id.* at 316-17; *see also Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 579 (8th Cir. 2016).

Tension does not argue that JBM lacked sufficient economic interest. It instead claims that JBM employed improper means. In particular, Tension says that in JBM's meetings with its customers, JBM improperly stated that Tension was a dishonest company. Tension's sole piece of evidence for this claim, though, is the "Mooney Memorandum": a document prepared by JBM's communications consultant before the meetings took place. Tension emphasizes that JBM reviewed the Mooney Memorandum in preparation for the meetings.

Yet every piece of evidence from individuals at the meetings indicates that JBM representatives did not say the alleged falsehoods suggested in the memorandum. The record contains multiple declarations from non-JMB individuals at the meetings, for example, who affirm that JBM did not disparage Tension. Tension attacks the credibility of these witnesses, but it has offered nothing to support its allegation of dishonesty. *See* Fed. R. Civ. P. 56(c)(1). Indeed, an internal document from one of the large customers shows that the customer agreed to work with JBM because of cost savings, not distrust of Tension. Tension cites *United*

*States v. Corps. for Character, L.C.*, which found a genuine dispute whether telemarketers used certain scripts in their calls, but the evidence in that case was conflicting. 116 F. Supp. 3d 1258, 1270-71 (D. Utah 2015). It is not here. Given the evidence, no "reasonable jury could return a verdict for" Tension. *See Anderson*, 477 U.S. at 248.[6]

### F. Unfair Competition

The final claim rejected on summary judgment concerns the tort of unfair competition. Missouri courts have described the tort as a "reaffirmation of the rule of fair play" and a protection against companies deceiving the public. *See Cushman v. Mutton Hollow Land Dev., Inc.*, 782 S.W.2d 150, 157-59 (Mo. Ct. App. 1990); *see also Am. Equity Mortg., Inc. v. Vinson*, 371 S.W.3d 62, 64–65 (Mo. Ct. App. 2012) (describing the doctrine). They have remarked at the doctrine's "elusive" nature. *See, e.g.*, *Cushman*, 782 S.W.2d at 157. Tension argues that JBM committed this tort in "plotting to steal Tension's customers."

We need not delineate the precise contours of the doctrine to reject the claim. Tension simply has not supported its assertion of unfairness. JBM acted with sharp elbows—as businesses often do. But nothing required them to affirmatively disclose their strategic plans. Tension cites to the Restatement (Third) of Unfair Competition to support its claim, but even this purportedly helpful authority makes clear that "neither new entrants nor existing competitors will be subject to liability for harm resulting solely from the fact of their participation in the market." *Id.* § 1 cmt. a (1995). Tension cites no case finding liability in circumstances similar to this case. We therefore conclude that the district court did not err in granting summary judgment on this claim.

---

[6] In a footnote in its reply brief, Tension argues that JBM's use of information derived from shipping releases issued by Tension constitutes improper means. We decline to address this new issue. *See Neb. State Legislative Bd.*, 245 F.3d at 658 n.3.

-13-

## G. Misappropriation of Trade Secrets

In its First Amended Complaint, Tension alleged that JBM misappropriated two trade secrets: the "identity of its customers and their unique requirements." *See* Mo. Ann. Stat. § 417.453 (Missouri Uniform Trade Secrets Act). After concluding that neither qualified as a trade secret under Missouri law, the district court dismissed the claim under Rule 12(b)(6). *See Tension Envelope Corp. v. JBM Envelope Co.*, No. 14-567-CV-W-FJG, 2015 WL 893242, at *8 (W.D. Mo. Mar. 3, 2015).

The district court did not err in doing so. In *Western Blue Print Co. v. Roberts*, the Missouri Supreme Court concluded that while the "customers contacts" in that case were "protectable, they are not protectable under a theory of . . . trade secret." 367 S.W.3d 7, 18 (Mo. 2012) (en banc). Tension offers no persuasive reason why *Western Blue* should not apply here. It invokes a Missouri Court of Appeals case for arguably a contrary proposition, *see Brown v. Rollet Bros. Trucking Co.*, 291 S.W.3d 766, 777 (Mo. Ct. App. 2009), but to the extent the decisions conflict, we follow the law as interpreted by the Missouri Supreme Court, *see United Fire & Cas. Ins. Co. v. Garvey*, 328 F.3d 411, 413 (8th Cir. 2003). Based on *Western Blue*, the identity of Tension's customers is not protectable as a trade secret.

For Tension's claim related to its customers' requirements, no Missouri Supreme Court decision speaks directly to the issue. But the intermediate appellate decision on which *Western Blue* relied does address the question. In *Walter E. Zemitzsch, Inc. v. Harrison*, the court noted that information related "to the customers' individual requirements" was not a trade secret, because it was "information obtainable without recourse to misappropriation." 712 S.W.2d 418, 421 (Mo. Ct. App. 1986) (alteration omitted) (quoting *Metal Lubricants Co. v. Engineered Lubricants Co.*, 284 F.Supp. 483, 488 (E.D. Mo. 1968), *aff'd.*, 411 F.2d 426 (8th Cir. 1969)). The same is true here. According to the amended complaint, Tension's envelopes complied with technical specifications generated *not* by Tension, but by

-14-

the customers themselves. The requirements are "their"—the customers'—requirements. Tension emphasizes that the amended complaint contains references to manufacturing processes, which could qualify as trade secrets. *See Nat'l Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 18 (Mo. 1966) (en banc). But the amended complaint repeatedly states that the relevant trade secret is the customers' requirements, and Tension cites no case for the proposition that the customer can generate the protectable information. *See, e.g.*, *Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co.*, 381 F.3d 811, 819 (8th Cir. 2004) (discussing information generated by a seller's "proprietary computer program"). Because the requirements are "information which JBM could have acquired from the customers themselves," *see Tension Envelope Corp.*, 2015 WL 893242, at *8, the district court did not err in concluding that Tension failed to state a claim for misappropriation of trade secrets.

## III.

For the foregoing reasons, we affirm.

_____